UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEVEN H.,[1]

             Plaintiff,    Case # 20-CV-1472-FPG

v.                    DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.
_____

## INTRODUCTION

In July 2015, Plaintiff Steven H. protectively applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security Income ("SSI") under Title XVI of the Act, alleging disability beginning December 1, 2013, due to carpal tunnel syndrome, headaches, chronic back pain, anxiety, shoulder pain, difficulty standing or walking, cervical radiculopathy, entrapment neuropathy, and ruptured and bulging discs. Tr.[2] 206, 213. After the Social Security Administration ("SSA") denied his claim, Tr. 122-25, Plaintiff appeared, with counsel, at a hearing on February 27, 2018, before Administrative Law Judge Melissa Jones (the "ALJ"). Tr. 69-101. Plaintiff and a vocational expert testified. On April 3, 2018, the ALJ issued an unfavorable decision regarding Plaintiff's application for benefits. Tr. 11-24. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-7. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 11. Plaintiff replied. ECF No. 13. For the reasons that follow,

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 8.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

1

Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED., and the ALJ's decision is AFFIRMED.

## LEGAL STANDARD

### I. District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II. Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education,

and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### I.   The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2013, the alleged onset date. Tr. 14. At step two, the ALJ concluded that Plaintiff had one severe impairment: discogenic disease of the cervical spine status-post anterior cervical microdiscectomy and fusion, with radiculopathy causing left shoulder pain. Tr. 14-15.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. Tr. 15-16. Next, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a),[4] except that he could only occasionally finger with the left hand, climb ramps and stairs, and stoop, kneel, crouch, or crawl; could never climb ladders, ropes, or scaffolds; and would require the use of a cane for balance and ambulation. Tr. 16-22.

At step four, the ALJ found that Plaintiff would be unable to perform any past relevant work. Tr. 22. At step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform—such as addressor, food order clerk, or document preparer—and therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 23-24.

---

[4] Sedentary work is defined in the regulations as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

**II.     Analysis**

Plaintiff argues that the ALJ did not properly apply the treating physician rule to Plaintiff's primary care physician, Edwin Heidelberger, M.D.  ECF No. 10-1 at 16-27.  The Court disagrees.

Under the rules applicable at the time Plaintiff filed his claim, an ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(c)(2)[5]; *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).  An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth his reasons" for doing so.  *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) (the SSA "will always give good reasons" for the weight afforded to a treating source's opinion).

When a treating physician's opinion is not given controlling weight, an ALJ considers the following factors to determine how much weight it should receive: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(1)-(6).

Plaintiff takes issue with the ALJ's treatment of Dr. Heidelberger's two opinions.  First, on January 26, 2018, Dr. Heidelberger completed a check-box form entitled "Reconstructive Surgery or Surgical Arthrodesis of a Major Weight-Bearing Joint."  Tr. 628-29.  Dr. Heidelberger opined that Plaintiff could never lift, climb, balance, stoop, kneel, crouch, or crawl.  Tr. 628.  He further

---

[5] Because the rules for Title II and Title XVI claims mirror each other, the Court will henceforth only cite to the rules for Title II.

opined that Plaintiff could sit and stand for 45 minutes at a time but for less than two hours total in an eight-hour workday.  Tr. 629.  Dr. Heidelberger determined that Plaintiff would be off-task 25% or more of the time and would be absent "[e]veryday."  Tr. 629.  Finally, Dr. Heidelberger found that Plaintiff would need to use a cane or assistive device when walking.  Tr. 628.

Second, on February 7, 2018, Dr. Heidelberger completed a "Physical Medical Assessment Form."  Tr. 636-39.  In this check-box form, Dr. Heidelberger opined that Plaintiff would be even more limited than he had opined one month earlier.  For example, Dr. Heidelberger opined that Plaintiff could sit and stand for only five minutes at a time.  Tr. 636.  Confusingly, he also stated that Plaintiff could sit and stand for one hour at a time.  Tr. 636.  According to Dr. Heidelberger, Plaintiff could never push or pull with either hand and could rarely reach, handle, finger, and feel.  Tr. 637.  Plaintiff could never operate foot controls with either foot, Tr. 637, and could never tolerate unprotected heights or vibrations.  He could rarely tolerate moving mechanical parts, pulmonary irritants, or extreme temperatures.  Tr. 638.  Again, Dr. Heidelberger opined that Plaintiff could sit and stand for less than two hours in a workday, never lift, climb, balance, stoop, kneel, crouch, or crawl, and would require the use of a cane.  Tr. 636, 638.  Plaintiff would be off task 25% of the time and absent 30 days per month.  Tr. 636.  Finally, Dr. Heidelberger opined that Plaintiff could not walk with a single handrail, but could care for himself.  Tr. 639.  Dr. Heidelberger was unsure if Plaintiff could use public transportation or sort, handle, or use paper files.  Tr. 639.

The ALJ gave both opinions "partial weight."  Tr. 21.  With respect to the January 2018 opinion, the ALJ concluded that Dr. Heidelberger's opinion that Plaintiff required the use of a cane was supported by the record, but the remainder of the opinion was inconsistent with Plaintiff's own testimony regarding activities of daily living, in which he admitted doing laundry, which

5

requires standing, and watching television and his daughter's cheerleading performances, both of which require sitting. Tr. 21. Similarly, the ALJ credited Dr. Heidelberger's February 2018 opinion to the extent it would require Plaintiff to use a cane. But the ALJ concluded that the rest of the assessed limitations, "which essentially note that the claimant could not do anything, are so hyperbolic as to stretch credulity." Tr. 21-22. Like with respect to the January 2018 opinion, the ALJ concluded that the February 2018 opinion was inconsistent with Plaintiff's admitted activities of daily living. Tr. 22.

Plaintiff argues that the ALJ erred by failing to explicitly evaluate each of the factors ALJs are required to address when considering opinions from treating physicians. To be sure, an ALJ commits a procedural error when he fails to explicitly consider the factors. *Holler v. Saul*, 852 F. App'x 584, 585 (2d Cir. 2021) (summary order). But the Second Circuit has "also explained that so long as the ALJ provided good reasons for its weight assignment, and a searching review of the record assures us that the substance of the treating physician rule was not traversed, we will affirm." *Id.* at 585-86 (quoting another source). In other words, even if the ALJ did not explicitly address each factor, as here, courts will not remand unless the record demonstrates that the ALJ violated the treating physician rule.

The Court concludes that the treating physician rule was not traversed here. First, the ALJ's proffered reasons for giving Dr. Heidelberger's opinions "partial weight"—*i.e.*, that they are inconsistent with Plaintiff's reported activities of daily living—are sufficiently good. For example, Plaintiff testified that he performed chores like washing laundry and showering, which require standing, and watching television, which requires sitting. Tr. 88-89. The record also reflects that Plaintiff can cook simple meals, care for his personal needs, socialize with friends during a road trip, go to the beach, sit by a bonfire, use a tablet to play games, and research

6

information. Tr. 88-90. He also attends his daughter's cheerleading performances on weekends, some of which are an hour away. Tr. 77. The ALJ did not err in considering Plaintiff's recreational activities to discount Dr. Heidelberger's conflicting restrictions. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary opinion) (upholding ALJ's treatment of treating physician's restrictive opinion based on plaintiff's reported recreational activities such as snowmobile trips, horseback riding, and going on cruise vacations).

Second, although Plaintiff argues that Dr. Heidelberger treated Plaintiff since 2015, the only treatment records from Dr. Heidelberger are from seven encounters in 2016 and 2017, mostly for medication management. Tr. 482-505. It is therefore not clear that Dr. Heidelberger had a long or extensive treatment relationship with Plaintiff.

Third, although the ALJ did not explicitly say so in her decision, Dr. Heidelberger's opinions are inconsistent with his own treatment notes and the rest of the record. To be sure, Dr. Heidelberger's treatment notes document neck pain and shoulder and arm numbness, Tr. 503, 500, 498, 494, 490, 486, 482, and reduced neck range of motion, Tr. 505, 501, 498, 495, 491, 488, 484. But those same notes record that Plaintiff had a full range of motion in his extremities, Tr. 505, 501, 498, 495. In an August 2017 visit, Dr. Heidelberger documented that Plaintiff "reports no weakness, other than form reconditioning, but notes that he will develop[] pain in lower neck." Tr. 486. In both August 2017 and November 2017, Plaintiff could walk heel to toe. Tr. 488, 484. These records do not support Dr. Heidelberger's conclusions that Plaintiff could never lift or use his arms or feet or that Plaintiff would be absent from work every day.

Indeed, Dr. Heidelberger's notes are remarkable not for what they say, but for what they are missing. Nowhere do his notes suggest that Plaintiff cannot sit or stand for more than a couple of hours or climb, balance, stoop, kneel, and crouch. Nor do his treatment notes suggest, as Dr.

7

Heidelberger opines, that Plaintiff is unable to work in unprotected heights, with mechanical parts, with pulmonary irritants, or in extreme temperatures.

The record does, however, support the ALJ's RFC for a range of sedentary work that allowed for use of a cane with additional nonexertional manipulative and postural limitations. For example, the ALJ correctly acknowledged that Plaintiff suffered a neck injury from a vehicle accident in May 2011. Tr. 18. Although findings of neck pain and decreased range of motion are consistent throughout the record, neurological examination findings demonstrated that Plaintiff had normal muscle strength, reflexes, coordination, balance, and gait. Tr. 347-48. Although imaging provided the basis for some of Plaintiff's pain, that imaging also demonstrated no appreciable foraminal stenosis correlating to the extent of Plaintiff's presented symptomology. Tr. 431 ("Normal post operative changes."), 432 ("Neurologically he is intact. . . . His range of motion is mildly limited and his wound is well healed. He has no gross deficits. . . . I don't see any foraminal stenosis on the left that would correlate with this clinical syndrome."), 435 ("He is really not having neck pain."); *see* Tr. 449, 452-53. The ALJ accounted for all this evidence in formulating the RFC that is consistent with the record as a whole. *See My-Lein L. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00446 EAW, 2021 WL 3266230, at *3 (W.D.N.Y. July 30, 2021) ("[A]n ALJ is tasked with weighing all of the evidence available to make an RFC that is consistent with the record as a whole.").

Plaintiff argues that case law requires that the ALJ perform an "explicit comparison" of the discounted treating physician's opinion and inconsistent notes or opinions in the record. ECF No. 10-1 at 19. In support of that proposition, Plaintiff points to a quote from *Gregory J. Comm'r of Soc. Sec.*, No. 19-CV-1615, 2021 WL 235888, at *3 (W.D.N.Y. Jan. 25, 2021). There, the Court concluded that the law "requires a much more explicit comparison of any alleged inconsistencies

between a treating source opinion and the medical evidence." *Id.* (quoting another source). Plaintiff takes that quote out of context to suggest that the law and regulations require that ALJs explicitly identify alleged inconsistencies in a treating source opinion and other evidence in the record. But the facts of *Gregory J.* do not suggest such an explicit requirement is applicable here. There, the Court took issue with the ALJ giving diminished weight to a treating opinion based, "unhelpfully" on what the ALJ referenced as "the reasons set forth above." *Id.* (quoting the ALJ's opinion). The Court determined that, having suggested that "inconsistencies" were the basis for discrediting a treating opinion, the ALJ could not simply leave those inconsistencies a mystery. Here, however, there is no mystery about the inconsistencies between Dr. Heidelberger's opinions and the rest of the record—his opinions simply do not compute with his own treatment records and the remainder of the evidence.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the pleadings, ECF No. 10, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 11, is GRANTED, and the ALJ's decision is AFFIRMED. The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 28, 2022
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York